John F. Scileppi, J.
This is a motion for an order to suppress evidence with respect to the third and fourth counts of the indictment on the grounds that the evidence was obtained by and was the product of an unlawful search and seizure in violation of defendant’s constitutional rights, and for a dismissal of said counts.
The first two counts of the indictment charge defendant with feloniously selling a narcotic drug on September 11 and September 15, 1961, respectively; the third count charges him with unlawfully possessing a narcotic drug on February 1, 1962; and the fourth count with violating section 1747-d of the Penal Law, the unlawful possession on February 1, 1962, of narcotic instruments and implements adapted in the administering of narcotic drugs.
The court ordered a hearing on said motion which was held on March 22, 1962.
So far as material to the issues before the court, the testimony of the police officers called as witnesses by defendant established that on September 11, 1961 and September 15, 1961, an undercover police officer assigned to the narcotic squad of the Police Department made separate purchases of narcotics from the defendant outside of premises 107-15 Sutphin Boulevard, Jamaica, New York. That officer made no on-the-spot arrest on either occasion. However, defendant was arrested for these offenses in his home several miles from where the sales took place on February 1, 1962, at about 7:30 or 8:30 p.m. by another police officer accompanied by the undercover officer who made the purchases. On that day, and prior to the arrest, the arresting officer was directed by his superior officer to accompany the undercover officer for the purpose of locating and apprehending the defendant. Both officers went to defendant’s *716 home at 129-11157th Street, Jamaica. When they arrived, they rang the doorbell which was answered by a girl who lived on the first floor of the premises and who admitted them through the outer door and into the foyer. Upon being asked by the officers if the defendant lived there, the girl told them he lived on the second floor. While this conversation was taking place, the defendant is alleged to have come down to the first floor and was identified by the undercover officer through the glass panel in the door which separated the foyer from the inner area of the first floor. The officers then asked the defendant his name and he gave it. Defendant opened the door and the officers entered the hallway. The officers then identified themselves as police officers and told defendant he was under arrest for the sale of narcotics. Defendant wanted to know “ when and where ”, and denied knowing anything about the charge. Defendant was in his bare feet at the time and then proceeded up the stairs to the second floor, apparently to put on his shoes and socks. The officers followed. There was no objection or resistance to this by the defendant. The doors to the defendant’s apartment and to his bedroom were open and when he entered the officers followed the defendant into the bedroom without objection. There was a tub of water on the floor, and the officers testified that the defendant told them he was having trouble with his feet. One of the officers saw a knife resting on a piece of furniture close to where the defendant was then standing in the bedroom and placed it in a part of the room away from the defendant. Both officers then proceeded to search the room. Defendant asked what they were doing “ there ” and objected to their disrupting his room. The officers continued the search and in a drawer of the night-table, they found a ‘ ‘ silver package held together by a rubber band and two eyedroppers, a cooker and three hypodermic needles which were placed in a matchbox.” According to the officers, when defendant was asked what these things were, the defendant said “these are my works, man.” The police officers then seized the silver package and the instruments and implements they had found. The defendant did not testify, and these facts were not contradicted by any other witnesses at the hearing.
Defendant contends that under the circumstances, the police action taken and the articles seized constituted an unlawful search and seizure of the defendant’s home in violation of his constitutional rights and seeks to suppress this evidence. Coneededly, the police had no warrant of arrest and had no search warrant at the time.
*717 The defendant, among other things, stresses the fact that although the alleged sales of the narcotics by the defendant to the police officer took place in September, 1961, he was not arrested until February 1, 1962, and there was sufficient time to procure a search warrant.
The evidence discloses that the undercover officer did not ascertain the name or address of the defendant until sometime between September and December of 1961, and that although he made several attempts to locate the defendant in his home between September and February, he was unsuccessful. He also testified that after he made the purchases of the narcotics from the defendant, he checked the police files and found a photograph of the defendant who had a prior record. He had other photographs of defendant made, and distributed the same to the area narcotic squad officers who as of February 1, had not located the defendant. In addition, the undercover officer at the time in question was assigned to the Boroughs of Brooklyn and Manhattan as well as in Queens and was not able to devote all of his time to this case. Moreover, in the war against the unlawful sale of narcotics, it is often essential for the undercover officer to protect his identity, and he does not always make an on-the-spot arrest in order to enable him to continue his daily battle with these criminals. This satisfactorily explains the delay in making the arrest in this case. There was no deliberate delay here for the purpose of justifying an incidental search of defendant’s premises.
Delay in arresting a defendant after obtaining necessary evidence to sustain an arrest does not per se render the arrest illegal. It is only where the arrest is deliberately and unreasonably delayed to circumvent the applicable law of search and seizure that the delay makes the subsequent search and seizure illegal. (McKnight v. United States, 183 F. 2d 977.)
The Supreme Court of the United States has held that the Fourth Amendment to the Constitution protects the People against unreasonable searches, and that a reasonable search incident to a valid arrest may be made without a search warrant. (United States v. Rabinowitz, 339 U. S. 56, 64, 64-66.) In that case the court said: “ Assuming that the officers had time to procure a search warrant, were they bound to do so? We think not, because the search was otherwise reasonable, as previously concluded.* * * A rule of thumb requiring that a search warrant always be procured whenever practicable may be appealing from the vantage point of easy administration. But we cannot agree that this requirement should be crystallized into a sine qua non to the reasonableness of a search. It is fallacious *718 to judge events retrospectively and thus to determine, considering the time element alone, that there was time to procure a search warrant. Whether there was time may well be dependent upon considerations other than the ticking off of minutes or hours. The judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential.
“ It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against unreasonable searches. It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required.
“ The right ‘ to search the place where the arrest is made in order to seize things connected with the crime as its fruits or as the means by which it was committed ’ (emphasis supplied) seems to have stemmed not only from the acknowledged authority to search the person but also from the long-standing practice of searching for other proofs of guilt within the control of the accused found upon arrest. United States v. Weeks, 232 U. S. 383, 392” (p. 61).
In Agnello v. United States (269 U. S. 20, 30) the court stated:
11 The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed * * * is not to be doubted.”
In this case, the arresting officer had previously received reliable information from the undercover officer (a reliable source) who was present when defendant was arrested, that the defendant had sold the undercover officer narcotics (a felony) on two separate occasions in September of 1961. The arresting officer, therefore, had probable cause for making the arrest. The arrest, therefore, was valid under our statutes (Code Crim. *719 Pro., § 177, subds. 2, 3, 4). It follows, therefore, that the search made incidental to this valid arrest was also valid if reasonable. (United States v. Rabinowitz,, supra.)
The question then is whether in this case the search of defendant’s premises without a warrant was reasonable. In the Rabinowits case (supra) it was stated that there was no fixed formula for determining the reasonableness of a search, and that the Constitution does not define what are reasonable searches, and that the reasonableness thereof depends on the facts and circumstances in each case, citing Go-Bart Co. v. United States (282 U. S. 344).
In this case, the police officers had the statutory authority to make the arrest in defendant’s premises. He had committed a felony (sale of narcotics) and if necessary the police had authority to break the door of defendant’s premises to enter had he resisted (Code Grim. Pro., § 178) after notification (Code Grim. Pro., § 180) (People v. Maddox, 46 Cal. 2d 301).
It was not necessary for the officers to resort to this action, however, because the defendant permitted the officers to enter his room without objection or resistance. The officers looked about his room and into the night-table where they found the articles sought to be suppressed on this motion. These articles consisted of a silver package, two eyedroppers, three hypodermic needles and a cooker. Knowing that the defendant had sold narcotics to the undercover officer in September they had probable cause to believe that the defendant possessed a supply of narcotics for sale. This search was made after the arrest of defendant and in his presence in the very room over which the defendant had immediate and complete control. Therefore, in the posture of the proof before the court the arresting officer made a reasonable search of the defendant’s premises incidental to and contemporaneously with the defendant’s valid arrest for the sale of narcotics made to the undercover officer in September, 1961.
For the reasons stated, the products of this reasonable search made incidental to the defendant’s lawful arrest may be used as evidence against him. Accordingly, the defendant’s motion to suppress is in all respects denied.