THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* EDWARD CASSONE, DOMINICK LA MONICA, FRANCIS CARBONARO and PASQUALE RUSSO, Defendants.

Court of General Sessions of the County of New York, August 10, 1962.

*J. M. Solomon* for Dominick La Monica and Pasquale Russo, defendants. *Samuel Segal* for Edward Cassone, defendant. *Anthony F. Marra* (*Thomas Brett* of counsel), for Francis Carbonaro, defendant. *Frank S. Hogan, District Attorney* (*Richard A. Nachman* of counsel), for plaintiff.

THOMAS DICKENS, J. This motion is aimed at suppressing evidence allegedly seized by the police without a search warrant. The seizure followed the arrest of defendants after each of the defendants had been first cast in the role of an *arrectatus* by the arresting officer.

At the testimonial hearing of this motion, the arresting officer stated on the stand that on January 1, 1962, about 12:30 A.M., at which time snow was falling, he had noticed a stationary automobile parked directly in front of a branch store of the Western Union Telegraph Company, situated on Nassau Street at a point just off the north side of Beekman Street. The trunk of the car was open. Two men were lifting a heavy object, which he could not make out, preparatory to placing it into the trunk, and a third man was walking toward the car and was slipping on the snow as he walked. The faces of the men, he did not see at that time. The distance from his point of vantage to the parked car, was about four hundred feet.

When the parked car with the three men in it started to pull away from the curb, he commandeered a car traveling in a northerly direction on Nassau Street and directed its autoist to follow the car that, as he told the autoist, had just pulled away from the curb. Although he had lost sight of the car several times during the pursuit, he eventually overtook it at Pearl Street and Park Row, where, as the result of a red traffic light, the pursued car had to stop.

At this place he got out of the commandeered car, and approaching the men, defendants herein, with drawn gun, ordered them out of their car, and proceeded to detain them at the point of his gun until the arrival of additional police officers. The other police officers, after their arrival, made a cursory search of the persons of defendants. He in turn sent someone to check his beat, which covered the vicinity of the Western Union store in question, and that that someone, on his return, informed him that the door of the Western Union had been forced. Defendants were thereupon transported to the Fifth Division Police Precinct, where they again, and the car too, underwent a search. When the police learned, in the course of the search, that defendants did not have the key to the trunk, which was locked, they called in a police technician to open it. When the trunk was opened, they found therein a safe upon which were inscribed the words, "Western Union," and they also found an assortment of tools, the kind used by burglars.

This procedure I regard as a restraint of liberty, and therefore, as a resulting arrest. (See *People* v. *Esposito,* 118 Misc. 867.)

On the basis of the foregoing summary of the policeman's testimony, the question that I am to resolve is: Was the arrest a lawful one prior to the search of the automobile and of the persons of defendants? Simply stated, if the arrest was lawful, then the motion must be denied. On the other hand, if the arrest was unlawful, then the motion must be granted. In other words, did the police officer have probable cause, within the principles as laid down by the ruling authorities, for the making of the arrest? — the arrest being the foundation as the prior act to the making of the search, and the search being the superstructure or the structure as the subsequent act to the making of the arrest. For, as it is written in Wharton's, Legal Maxims (English translation), page 229, No. 113: "A weak foundation destroys the superstructure," and as written in another way in Ballentine's Law Dictionary [1st ed.] (English translation), page 1243: "With the removal of the foundation, the structure falls."

Both the Federal law and the State law require a warrant for the search of the premises or of the person of an individual, unless the circumstances are such that they justify an arrest without a search warrant. The Fourth Amendment of the Constitution of the United States prohibits unreasonable searches and seizures; therefore, as the converse, if searches and seizures are reasonable and are in compliance with the law, they are permissible. (See *People* v. *Colvert,* 33 Misc 2d 714.)

Under Federal jurisdiction an arrest without a warrant is permitted if there is probable cause to believe that a crime had been committed, and that the person accused had committed it or that he was in the act of committing it. (*Carroll* v. *United States,* 267 U. S. 132 [National Prohibition Act violation involved].)

Probable cause is a reasonable belief that a crime has been committed based on knowledge on the part of the officer, although such knowledge might in value be less than evidence. (*Brinegar* v. *United States,* 338 U. S. 160, 175; see, also, *People* v. *Lane,* 10 N Y 2d 347; *People* v. *Politano,* 32 Misc 2d 526, 528.) When the police arrest without a warrant the duty devolves upon the People to show that the arrest was lawful. (*Brinegar* v. *United States, supra.*)

Section 177 of the Code of Criminal Procedure reads as follows, in its application to this case: " A peace officer may, without a warrant, arrest a person * * * [w]hen a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have committed it ". (See *People* v. *Lane,* 10 N Y 2d 347, 353, *supra,* as to the discussion of this provision.)

A search is good or bad when it starts and does not change character from its success. (*People* v. *O'Neill,* 11 N Y 2d 148, 153.)

The validity of an arrest or of an entry to effect an arrest without a warrant, depends upon the existence of probable cause as justification for the making of the arrest, and such probable cause cannot be based on evidence obtained as the result of a search when the validity of the search itself depends on the validity of the arrest. (*People* v. *Loria,* 10 N Y 2d 368; see, also, *People* v. *Brown,* 32 Misc 2d 846.)

I am unable to find anything in the testimony given by the police officer which shows that the officer had any knowledge that a crime had been committed or that it was in the process of being committed at the time of the arrest. At the best, it seems to me that he had acted on mere suspicion sparked by a keen intuition. But, suspicion alone is not sufficient to support probable cause. Suspicion is not enough to justify an arrest without a warrant. There must be more than bare suspicion in order to give effective meaning to the theory of probable cause. (*People* v. *O'Neill, supra*; *Brinegar* v. *United States, supra*; see, also, *Rios* v. *United States,* 364 U. S. 253, 261.)

Of further interest is this excerpt from *Henry* v. *United States* (361 U. S. 98, 104): " an arrest is not justified by what the subsequent search discloses. *Under our system suspicion is*

*not enough for an officer to lay hands on a citizen.* It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest.

" *The fact that suspects were in an automobile is not enough.* *Carroll* v. *United States* [267 U. S. 132], liberalized the rule governing searches when a moving vehicle is involved. But that decision merely relaxed the requirement for a warrant on grounds of practicality. *It did not dispense with the need for probable cause.*" (Emphasis supplied.)

In fine, " ' It is as important to a person that he be fairly accused of crime as that he be fairly and impartially tried therefor ' " (*People* v. *Stern,* 33 Misc. 455, 457), for " The law is no respecter of persons, and suffers no man, be he guilty or innocent, to be deprived of his liberty, except ' by due process of law ' ". (*People ex rel. Tweed* v. *Liscomb,* 60 N. Y. 559, 569.)

The failure of the People to substantiate the making of a lawful arrest, merits the granting of the motion; consequently, I direct the suppression of the evidence seized as the result of the arrest.

The motion to suppress is granted. Submit order.