172 So.2d 787

**Grady KNOX**

**v.**

**STATE.**

**8 Div. 964.**

Court of Appeals of Alabama.

Dec. 15, 1964.

Rehearing Denied Jan. 12, 1965.

Ralph E. Slate, Decatur, for appellant.

580

Richmond M. Flowers, Atty. Gen., and W. Mark Anderson, III, Asst. Atty. Gen., for the State.

PER CURIAM.

The appellant, Grady Knox, was indicted for the offense of burglary in the second degree. He entered a plea of not guilty and was tried in the Circuit Court of Morgan County, Alabama. The jury found the appellant guilty as charged in the indictment and he was adjudged guilty by the Court and sentenced to eighteen months in the State Penitentiary. His motion for a new trial was denied on March 16, 1964; hence, this appeal.

The facts of the case are as follows: On Monday morning, September 10, 1963, shortly after daybreak, employees of a dry goods store in Decatur, Alabama, known as David Lee's, discovered that the store had been burglarized. A safe had been broken open and money bags, checks, and currency were missing therefrom. Two holes large enough for a man to pass through had been cut in the ceiling of the store, and, since there were footprints on clothing on counters directly under the holes, it seemed apparent that a burglar or burglars entered the building by descending through the holes onto the counters. Pieces of paper with writing on them were found in the store which had some tendency to indicate that they belonged to or had been in the possession of one Raymond Aday.

Officer E. C. Bowman and two other officers of the Decatur Police Department went to a trailer court where Aday lived in a trailer house. The officers found Aday in front of another trailer in which the appellant lived, talking to two women. Aday was arrested by the officers and then Officer Bowman entered the appellant's trailer without a warrant for the appellant's arrest or a warrant to search the trailer, and, after seeing a coil of rope in open view on a table in the trailer, he arrested the appellant for "suspicion of burglary", and confiscated the rope. The appellant was taken to the city jail where he was held until the following day without being charged with a crime.

After testifying that he had no warrant to arrest the appellant, Officer Bowman testified in part:

"Q. All right, sir, so you had no warrant for his arrest. Had he committed any crime in your presence?

"MR. Hundley: We object; calls for a conclusion, legal conclusion at that.

81

"THE COURT: Overruled.

"Q. The judge said you can answer.

"A. No, sir.

* * * * * *

"Q. Could you have seen the rope or did you see the rope before you got into the house?

"A. No, sir.

* * * * * *

"Q. Just tell the Court what you did when you went out to Knox' trailer there, Lieutenant Bowman.

"A. There was two other officers with me. Raymond Aday was outside the trailer along with two women, I believe their names are Zeta May Shelton and Pauline Shelton. We took Raymond into custody and told him that we wanted to question him down at the Police Station. At least one of the officers remained with Raymond, and I was the first officer to the door, the door was open, I don't recall if I knocked. I could see Mr. Knox inside the the trailer. I stepped up in the trailer and asked him if he was Grady Knox.

* * * * * *

"Q. Did he either prior or after the the time you asked him whether or not he was Grady Knox, did he offer you any resistance or opposition or ask you to leave the trailer or request that you leave or demand that you leave or in anyway suggest that you leave?

"A. No, sir."

The morning after the appellant's arrest, while he was held in jail without being charged with any crime and denying any knowledge of the burglary, Officer Bowman obtained a warrant from the Recorder of the City of Decatur to search the appellant's trailer house for prohibited liquors, and went with two other officers to the trailer. Bowman testified that he searched the trailer under this warrant for articles missing from the safe in David Lee's store as well as for liquors. The officers found no liquor in the trailer but they did find currency, money bags, and checks which they confiscated, and part of which were identified at the trial as articles missing from the safe in David Lee's store. The appellant was formally charged with burglary after this evidence was procured.

The rope seized at the time of the appellant's arrest without a warrant in his trailer house, which is referred to as the "first search," and the articles seized during the search conducted under the search under the prohibited liquor warrant, which is referred to as the "second search," were introduced in evidence over the appellant's objections, in effect, that they were the fruits of illegal searches and seizures.

The court below found:

" * * * First, as to the so called 'first search' the entering of the Knox trailor was, in this Court's view by 'implied' invitation. Secondly, the 'taking' of the rope was not an illegal search and seizure for there was no search it being in 'plain view.' Kelley v. State, 39 Ala.App. 572, 105 So.2d 687. Thirdly, the arrest being legal, there was a 'derivative right of search and seizure.' Phillips v. State, 152 So.2d 148, [42] Ala.App. [64]. As to the so called 'second search' the articles taken were seized under warrant for prohibited liquors. It is not grounds for objection that evidence of a crime discovered while making a search under warrant to search for another purpose are found. [79] C.J.S. Searches and Seizures, Sec. 83, Page 904. The Court might here point out that the Court could have overruled the objection of the admission of this evidence because a motion to suppress was not filed before the case was tried."

The prohibition of the Fourth Amendment of the United States Constitution

against unreasonable searches and seizures, which forbids the Federal Government to convict a man of a crime by using evidence obtained from him by unreasonable search and seizure, is enforceable against the States through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

■ In Kelley v. State, 39 Ala.App. 572, 105 So.2d 687, this Court held that "[a] mere observation of that which is in full view is not a search." In Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, the court stated, in effect, that the doctrine of the Fourth and Fifth Amendments "apply to all invasions on the part of the government and its employes of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty, and private property * * *." Thus, we are of the opinion that "in plain view" as used in the Kelley case, supra, cannot be construed to mean in plain view of a police officer within a private residence only after the officer's entry therein without legal authority—i. e., as a trespasser. Where a police officer enters a private residence without legal authority, any incriminating evidence discovered and seized therein after the entry is the fruit of an unreasonable search and seizure, and, further an arrest based on such evidence is illegal and no derivative right of search and seizure attaches thereto. See Weldon v. State, 39 Ala.App. 286, 97 So.2d 825.

■ A search of a private residence without a search warrant is unreasonable and not incidental to an arrest when the arrest follows the search and could not have been lawfully made before the search. 89 A.L.R.2d 757.

■ In the present case Officer Bowman testified that in the "first search" he did not see the rope until after his entry into the appellant's trailer home; that he entered the trailer without a warrant to arrest the appellant or without a search warrant; and that he arrested the appellant after discovering the rope. Thus, it follows that the rope is the product of an unreasonable search and seizure unless Officer Bowman entered the appellant's trailer by invitation, permission, or consent, or for the purpose of making an arrest without a warrant as authorized by Section 154, Title 15 Code of Alabama, 1940.

■ We indulge every presumption against the waiver by an accused of his constitutional right against unreasonable searches and seizures. See Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680. To justify the introduction of evidence seized by a police officer within a private residence on the ground that the officer's entry was made by invitation, permission, or consent, there must be evidence of a statement or some overt act by the occupant of such residence sufficient to indicate his intent to waive his rights to the security and privacy of his home and freedom from unwarranted intrusions therein. An open door is not a waiver of such rights. A peaceful submission to a search or seizure is not a consent or an invitation thereto, but is merely a demonstration of regard for the supremacy of the law. 79 C.J.S. Searches and Seizures § 62, Page 821. We find nothing in the record to support a conclusion that Officer Bowman entered the appellant's trailer by invitation, permission, or consent.

■ When a police officer arrests without a warrant, and the defendant objects to the introduction of evidence claimed to be incident to such an arrest, the burden is on the State to show that the arrest was lawful. See People v. Cassone, 35 Misc.2d 699, 230 N.Y.S.2d 822. If the arrest without a warrant is unlawful, evidence seized incident thereto is inadmissible.

Officer Bowman testified that the appellant committed no crime in his presence and, therefore, the arrest of the appellant at the time of the "first search" cannot be

justified as an "on view" arrest. There is nothing in the record from which it can be said that Officer Bowman, before entering the trailer, had reasonable cause to believe that the appellant had committed a felony, so as to justify the arrest under Section 154, Title 151, Code of Alabama, 1940.

We conclude that the appellant's objection to the introduction of the rope should have been sustained.

Our Supreme Court stated in Brown v. State, 277 Ala. 108, 167 So.2d 291:

> "If illegally obtained evidence is inadmissible before the trial, it is still inadmissible at the trial if the circumstances have not changed. We are of opinion that the better rule is that a pretrial motion to exclude is not necessary. * * *
>
> * * * * * *
>
> "We do not hold that a pretrial motion to suppress is improper, but we do hold that such motion is not necessary and that objection may be made for the first time when the illegally obtained evidence is offered at the trial."

■ Although only a pretrial motion to suppress illegally obtained evidence is mentioned in the Brown case, we interpret that decision as holding that a defendant may object to the introduction of illegally obtained evidence for the first time at the trial, although he failed to make such an objection in any preliminary proceeding, including a protest to the issuing magistrate by way of a motion to quash the return.

In support of his application for the search warrant under which the "second search" of the appellant's trailer house was conducted, Officer Bowman submitted an affidavit which recited, in relevant part, that Officer Bowman "has probable cause for believing and does believe that Grady Knox sells, keeps for sale or stores prohibited liquors" on described premises. The appellant objected to the introduction of the articles seized during the "second search" on the ground, among others, that there was no showing of probable cause for the issuance of the warrant. The warrant and supporting affidavit were introduced by the State.

The Fourth Amendment of the United States Constitution, and Article 1, Section 5, Constitution of Alabama, 1901, provide, in part, that no warrants shall issue without probable cause, supported by oath and affirmation.

Section 212, Title 29, Code of Alabama, 1940, provides, in part, in reference to the issuance of contraband liquor search warrants:

> "Said warrants may be issued only on probable cause supported by affidavit naming or describing the person or other party whose premises are to be searched, * * *."

Section 214, Title 29, further provides:

> "The magistrate, before issuing a warrant, must examine the complainant on oath, and any other witnesses he may produce, and take their depositions in writing, and cause the same to be subscribed by the person or persons making them; and the same must set forth facts and circumstances as both tending to establish the ground or grounds of the application or probable cause for believing that a ground exists authorizing search warrant to issue."

In Edmunds v. State ex rel. Dedge, 199 Ala. 555, 74 So. 965, 967, we find:

> "Although, following the provisions common to all search warrants and preliminary proceedings, the act requires that 'the magistrate before issuing a warrant must examine the complainant on oath, and any other witnesses he may produce, * * * and take their deposition in writing, and cause the same to be subscribed by the person or persons making them' (section 22, subd. 3), the omission of these requirements

has never been regarded as vitiative of the warrant when it is issued upon a sufficient affidavit."

In Toole v. State, 170 Ala. 41, 52, 54 So. 195, 198, the Court said:

"The ascertainment of probable cause for the issue of the writ involved the exercise of the judicial function. Having acquired and exercised jurisdiction in the premises by taking the affidavit of a person, and having issued the warrant substantially as required by the statute, the weight of the evidence to establish probable cause could not be made the subject of inquiry, nor could the judgment in that regard of the issuing magistrate, be made the subject of review on the trial of the cause."

Thus, the law in Alabama, in view of the Edmunds and Toole cases, would seem to be that a search warrant issues by judicial act, and in the absence of a showing that the warrant did not issue upon an affidavit as required by Section 212, supra, it is conclusively presumed that there was sufficient information before the issuing magistrate upon which the finding of probable cause could be based.

An affidavit which recites the affiant's belief of the matters contained in the affidavit as a conclusion, with the same words as used in the affidavit in the instant case, has, in effect, been held sufficient to support a search warrant. See City of Bessemer v. Eidge, 162 Ala. 201, 50 So. 270; Porch v. State, 38 Ala.App. 565, 89 So.2d 694.

However, Goldberg, J., recently wrote in Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723:

"In Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, we held that the Fourth 'Amendment's proscriptions are enforced against the States through the Fourteenth Amendment,' and that 'the standard of reasonableness is the same under the Fourth and the Fourteenth Amendments.' Id., 347 U.S. at 33, 83 S.Ct. at 1630 [10 L.Ed. 2d at 738]. Although Ker involved a search without a warrant, that case must certainly be read as holding that the standard for obtaining a search warrant is likewise 'the same under the Fourth and Fourteenth Amendments.'

"An evaluation of the constitutionality of a search warrant should begin with the rule that 'the informed and deliberate determinations of magistrates empowered to issue warrants * * * are to be preferred over the hurried action of officers * * * who may happen to make arrests.' United States v. Lefkowitz, 285 U.S. 452, 464, 52 S.Ct. 420, 423, 76 L.Ed. 877, 882 [82 A.L.R. 775]: The reasons for this rule go to the foundations of the Fourth Amendment. A contrary rule 'that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers.' Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 [440]. Under such a rule 'resort to [warrants] would ultimately be discouraged.' Jones v. United States, 362 U.S. 257, 270, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 [708] [78 A.L. R.2d 233]. Thus, when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,' ibid., and will sustain the judicial determination so long as 'there was substantial basis for [the magistrate] to conclude that narcotics were probably present * * *.' Id., 362 U.S. at 271, 80 S.Ct.

at 736 [4 L.Ed.2d at 708]. As so well stated by Mr. Justice Jackson:

" 'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'

"Johnson v. United States, supra, at 333 U.S. at 13–14, 68 S.Ct. at 368 [369] [92 L.Ed. 440].

"Although the reviewing court will pay substantial deference to judicial determinations of probable cause, the court must still insist that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police.

"In Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159, a warrant was issued upon the sworn allegation that the affiant 'has cause to suspect and does believe' that certain merchandise was in a specified location. Id., 290 U.S. at 44, 54 S.Ct. at 12 [78 L.Ed. at 160]. The Court, noting that the affidavit, 'went upon a mere affirmation of suspicion and belief *without any statement of adequate supporting facts*,' id., 290 U.S. at 46, 54 S.Ct. at 13 [78 L.Ed. at 161] (emphasis added), announced the following rule:

" 'Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from *facts or circumstances* presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough.' Id., 290 U.S. at 47, 54 S.Ct. at 13 [78 L.Ed. at 162]. (Emphasis added.)"

The Court concluded in the Aguilar case that a search warrant should not have been issued upon an affidavit which did not provide a sufficient basis for a finding of probable cause by the issuing magistrate, and that, therefore, evidence obtained as a result of the search warrant was inadmissible in a Texas Court.

In footnote 1 of the Aguilar case the Court said that the record did not reveal that any information other than that contained in the affidavit was brought to the attention of the issuing magistrate, and then stated:

" * * * It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention. Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 · [1509], 79 C.J.S. Searches and Seizures § 74, p. 872 (collecting cases). * * * "

■ Under authority of the Aguilar case, and the Ker and Nathanson cases cited therein, we are compelled to hold, and do hold, that an affidavit which recites the affiant's belief of the matters contained therein, without supporting facts or circumstances upon which a finding of probable cause could be based, is insufficient to support a search warrant; and evidence seized as a result of a search warrant issued upon such an affidavit must be excluded in the absence of a showing by the State that, in addition to the matters contained in the affidavit, other information was before the magistrate from which a finding of probable cause could be based.

Inasmuch as a defendant may now object to the introduction of illegally seized evidence for the first time at the trial, we are of the opinion that a defendant would be denied his substantial rights if he could not raise the question of whether a search warrant under which evidence is seized was issued upon probable cause, supported by oath or affirmation. Thus, we hold that when a defendant objects to the introduction of evidence seized under a search warrant, on the ground that there was' no probable cause for the issuance of the war-

rant, the trial judge should determine if the warrant is supported by a sufficient affidavit. We do not here decide whether a defendant may go behind the warrant and affidavit to show there was no probable cause for the issuance of the warrant.

[10] However, if the affidavit, on its face, is found by the trial judge to be insufficient to support a finding of probable cause, as illustrated in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the State may then adduce testimony showing that sufficient evidence was, in fact, before the issuing magistrate upon which a finding of probable cause could be based. Insofar as inconsistent with this opinion, the decisions cited above, principally Toole v. State, must be deemed to have been overturned by the cited opinions of the Supreme Court of the United States.

The affidavit upon which the search warrant was issued in the instant case was insufficient to support the warrant for the reason that it went upon the affiant's belief of the matters contained therein, without facts or circumstances upon which such a belief could be based. Therefore, as the record does not reveal that any other information was before the magistrate, the articles seized as a result of the warrant should have been excluded.

Inasmuch as this cause is due to be reversed for the reasons set forth above, we pretermit other matters relied on for reversal, with the belief that they are not likely to occur upon a new trial.

Reversed and remanded.

CATES, Judge (concurring specially).

What we decide here is threefold: (1) Brown v. State, Ala., 167 So.2d 291—even though merely denying certiorari—expressly disapproved our prior dicta as to the need for the pretrial motion to suppress; (2) Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, and Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, require that certain minimal evidence [1] of probable cause be laid before the judge who issues the search warrant; and (3) the supremacy clause of the Federal Constitution forces us to declare that Porch v. State, 38 Ala.App. 565, 89 So.2d 694, Edmunds v. State ex rel. Dedge, 199 Ala. 555, 74 So. 965, and Toole v. State, 170 Ala. 41, 54 So. 195, insofar as making the issuance of a warrant incontestable except before the issuing court, set forth bad law.

The only barrier [2] to this result is in Code 1940, T. 13, § 95, which reads:

"The decisions of the supreme court shall govern the holdings and decisions of the court of appeals, and the decisions and proceedings of such court of appeals shall be subject to the general superintendence and control of the supreme court as provided by section 140 of the Constitution of the state."

However, this section being derived from § 140 of the Constitution of 1901 relates only to matters in which the Supreme Court of Alabama is infallible because it is final. Manifestly, on Federal questions the only priority the Supreme Court of Alabama has over us is that of being the next link in the chain of command.

The command of Article 6, Cl. 2, of the United States Constitution [3] is not indirectly linked to us through intermediary ministrations. The Supremacy Clause is a mandate to each and every one of our judges, State and Federal.

1. See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, and Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, to refute the bugaboo that police informers must be named.
2. Clearly Code 1940, T. 13, § 98, does not apply here because there is no State or Federal statute drawn into question.

Nor is there any inability to reach a unanimous conclusion so as to certify an abstract question under Code 1940, T. 13, § 88.
3. "This Constitution, * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."