Joel J. Tyler, J.
The defendant is charged with violation of section 165.40 of the Penal Law, in that, on February 22, 1968, he knowingly possessed 22 stolen credit cards.
Defendant duly moved, pursuant to section 813-c of the Code of Criminal Procedure, to suppress the seized credit cards and a certain inculpatory statement made by defendant.[1] Further, in a supporting affidavit, attached to the written notice of motion to suppress, and served upon the District Attorney more than two weeks prior to the hearing,[2] defendant placed the People upon notice that upon any hearing on the motion to suppress, the defendant “ will request grand jury minutes in a case involving your deponent and others in which they were charged with acting in concert with other defendants, namely, Carl Oliver and Eric Thornhill to stab and beat a certain individual and to take from his possession certain United States currency. Those minutes will show that your deponent was not indicted and that there was no reason or probable cause for his arrest. That the said grand jury minutes are further sought for the purposes of cross-examination of any witnesses who previously testified at the grand jury.”
The sole witness at the hearing was the arresting Patrolman, Brian K. Gallery, who was called for the People.[3] His testimony, insofar as here pertinent, was as follows:
1. At about 8:30 p.m. on February 22, 1968, he observed an auto pass through a red signal light at West 71st Street and West End Avenue in the Borough of Manhattan, which then proceeded the wrong way up a one-way street. The officer apprehended the vehicle one block distant at Broadway and West 71st Street. The defendant, a Caucasian, was operating the vehicle, while two Negro passengers were also seated therein.
2. The officer then requested of the defendant his driver’s license and auto registration. The defendant produced the driver’s license but not the registration. The officer thereupon radiod a “ 1085 Call ” from his police car to headquarters to *63 ascertain if the plate number of defendant’s vehicle had been reported stolen.[4] However, the officer’s message was interrupted by the radio dispatcher, who reported a ‘c crime in progress ’ ’ (a 1030 call) on West 71st Street and West End Avenue, about one and one-half blocks from where the parties were then situated.
3. The officer then placed the defendant in the police car,[5] and together with Officer Gallery’s partner, proceeded to 329 West 71st Street. The two passengers remained detained at the place where defendant’s car was stopped, in the custody of other later arrived police officers.
4. When Officer Gallery, his partner, and defendant arrived at the scene of the alleged crime, they found ‘ ‘ the 79 year old man, ’ ’ later identified as Stanley Zimsack, on the street “ apparently injured. ’ ’ Gallery left his car and approached Zimsack; defendant remained in the car with Gallery’s partner. Upon questioning, Zimsack allegedly told Gallery that he had been ‘ ‘ assaulted ’ ’ by “ two male Negro youths,” who also removed from his person ‘ ‘ eleven single dollar bills, ’ ’ and then ‘ ‘ fled in a light colored car, two door,” which he thought to be a convertible. The car driven by defendant was described by Officer Gallery as “ a light beige, it’s very light and it is a convertible.”
5. Officer Gallery then ‘ ‘ brought the defendant to the station house,” and the two passengers were brought there as well by the other officers, while defendant’s car was driven to the vicinity of the precinct by a fellow officer.
6. Mr. Zimsack later arrived at the station house, and after viewing the defendant and his passengers (not in a lineup), he spoke with Officer Gallery, who said he then placed all three under arrest and charged them with robbery.[6]
7. Officer Gallery then left the station house, went to defendant’s auto and searched it. He found the aforesaid credit cards under the driver’s seat and eleven single dollar bills “in the boot compartment where the convertible top goes down.” Gallery then returned to the station house and questioned the defend *64 ant and Ms passengers relative to the wallet ;[7] the defendant then made the inculpatory statement, in which he “ admitted ownership of the wallet. ’ ’
There are several legal questions here involved, the answers to which all militate to the -conclusion that the motion to suppress should be granted.
1. Defendant’s counsel assumed the firm position that the statements of Stanley Zimsaclc to Officer Gallery, and as reported at the hearing by the officer, were hearsay and inadmissible.
2. The People, through its Assistant District Attorney was by express direction required by this court to furnish it and the defendant, with a copy of the Grand Jury minutes, relative to the presentment to the Grand Jury concerning the robbery charge and the incidents here involved. As aforesaid, a demand therefor had, previous to the hearing, been duly made by defendant, the reasonable costs of which defendant agreed, at the hearing, to pay. The People failed or refused to furnish a copy of such minutes. Is the defendant entitled to such Grand Jury minutes at this hearing, covering testimony of any witnesses who would testify at the instant hearing, and what are the consequences of such failure or refusal?
3. At what point was defendant, in fact and in law, placed under arrest, and was that arrest based upon probable cause ?
The first question can readily be disposed of, in that hearsay evidence is admissible in a hearing on a motion to suppress “ Hearsay will be admissible on the issue of probable cause ”. (People v. Loria, 10 N Y 2d 368, 374; People v. Schnitzler, 18 N Y 2d 457,460; People v. Coffey, 12 N Y 2d 443.)
With respect to the second question, the courts of this State, following the unmistakable lead of the United States Supreme Court (Jencks v. United States, 353 U. S. 657, which resulted in the enactment of the Jencks Act [U. S. Code, tit. 18, § 3500]) condemns the view that a defendant may not examine prior statements of a witness, unless such statements are pre-examined by the court to ascertain if they contain matter inconsistent with the witness’ testimony on the stand. Prior to Jencks it was the practice in our courts, that such statements were to be pre-examine'd by the court to determine the existence of such inconsistent testimony, and if inconsistent it could be used by the defense for purpose of cross-examining that witness, but otherwise could not be so used. (People v. Walsh, 262 N. Y. 140.)
However, with the advent of People v. Rosario (9 N Y 2d 286) our State’s Mghest court confirmed the reasonableness of the *65 Jenclcs doctrine, and declared any prior statement by a witness “ to police, district attorney or grand jury ” (p. 289) must be made accessible to the defense, without regard to the court’s prior determination that the statement is inconsistent with the testimony of the witness on the stand. (See, also, People v. Miles, 23 N Y 2d 527.) The only conditions placed upon the unlimited accessibility to such pretrial statement is that it must relate to the subject matter of the witness’ testimony and that it not contain matters of a confidential nature.
In expressing the new doctrine, the court in Rosario declares (p. 289) that “ a right sense of justice entitles the defense to examine a witness’ prior statement, whether or not it varies from his testimony on the stand.” And “ In short, since [1] the State has no interest in interposing any obstacle to the disclosure of the facts ’ and since the ‘ defense should be given the benefit ’ of any ‘ information that can legitimately tend to overthrow the case made by the prosecution, or to show that it is unworthy of credence ’ [cases cited], the defendant is entitled to see and use the entire statement. Otherwise, there is always a danger that something Avill be Avithheld from defense counsel which may assist him in impeaching the prosecution’s Avitness.” (p. 290).
We affirm and give legal credence to the oft spoken adage that where mystery begins, law ends, and “ a right sense of justice ” militates to full disclosure of the witness’ prior position, whatever it might be and wherever made, in the interest of ascertaining the facts.
Certainly, Officer Gallery’s Grand Jury testimony constitutes such prior statement (People v. Wilson, 16 A D 2d 207; People v. Monahan, 21 A D 2d 76, 78; 7 ALR 3d 181, 235), which Rosario compels must be made available to the defense. It “ relates to the subject matter of the Avitness’ testimony” at the hearing, and no claim Avas or could be made that it contained confidential matter, which would subject it to the prohibition against disclosure.
Further, the defendant here gave due and reasonable notice that he will require the Grand Jury minutes and agreed to pay the reasonable and necessary costs for transcribing the same. Thus he met the conditions of People v. Jaglom (17 N Y 2d 162).
Such Grand Jury minutes, if required, must be furnished not only at a trial, but, if required, also at any hearing. (People v. Malinsky, 15 N Y 2d 86, 90; People v. Ross, 21 N Y 2d 258, 263.)
The People’s inexcusable failure or refusal to furnish a copy of the Grand Jury minutes, in the light of the above precedents and this court’s express and explicit direction that they be fur *66 nished to defendant, represent a substantive derogation of defendant’s rights and lend justification, in and of itself, for granting defendant’s motion. However, there are other compelling reasons, hereinbelow discussed, which support the defendant’s position.
We must now determine at what point was defendant placed under arrest and was that arrest based upon probable cause. “ The precise time at which an ‘ arrest ’ occurred * * *' should be determined as a question of fact whenever such time becomes a relevant factor. (Rios v. United States, 364 U. S. 253, 262).” (People v. Entrialgo, 19 A D 2d 509, 511.)
Officer Gallery’s testimony as to when he formally placed defendant under arrest is inconsistent. At one point he claims that he advised defendant that he was under arrest while they were driving in the police car to the station house. At another point, he testified that he placed defendant under arrest and charged him with robbery after Mr. Zimsack came to the station house and apparently identified the defendant and his two passengers as the persons who assaulted and robbed him.
In fact and in law, the officer placed defendant under arrest when he “ told ” defendant to “ get in the [i.e. police] car ”[8] and drove him from the spot where defendant had been stopped to the scene where Mr. Zimsack was found. The arrest was not made for the traffic infractions, and Officer Gallery so insisted (but which he could have made under the authority of section 177 of the Code of Criminal Procedure; subdivision 3 of section 10.00 of the Penal Law, and section 155 of the Vehicle and Traffic Law), but rather it was made, in fact, because the officer thought he had reasonable cause in believing that defendant had or may have committed a felony. (Code Grim. Pro., § 177, subd. 3.)[9]
It is obvious that the language of the officer represented a command to the defendant that he enter the police car and be driven to the scene of the alleged crime. The officer, at that point, placed defendant under arrest by exercising dominion and control over him. (People v. Estrialgo, 37 Misc 2d 264, revd. on other grounds sub nom. People v. Entrialgo, 19 A D 2d 509, affd. 14 N Y 2d 733.) Defendant was then in custody, in spite of the officer’s denials in that regard. (Code Grim. Pro., § 167.) One *67 is in custody when he has been deprived of his “ freedom of action in any significant way ” (Miranda v. Arizona, 384 U. S. 436,444; United States v. Viale, 312 F. 2d 595; People v. Tanner, 31 A D 2d 148, 149 ; Mr. Justice Nathan R. Sobel, Search and Seizure, p. 64). “ ‘ We hold that custody occurs if the suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived ’ ” (People v. Williams, 56 Misc 2d 837, 840 [Sup. Ct., Kings County, April, 1968]). Whenever a suspect’s liberty of movement is interrupted by the police, the arrest is complete without the use of any “ formal words ” or “ declaration ” that he is under arrest. (Moran v. United States, 404 F. 2d 663, 666 [C. A. 10th].)
If the arrest, at the time made, was illegal by not having been based upon probable cause, any incidental search avails the People nothing. (United States v. Di Re, 332 U. S. 581, 595; People v. Loria, 10 N Y 2d 368; Henry v. United States, 361 U. S. 98,104; People v. Cassone, 35 Misc 2d 699, 700, revd. on other grounds 20 A D 2d 118, affid. 14 NY 2d 798, cert. den. 379 U. S. 892.) Of course, if the arrest can be validly maintained, any incidental search and seizure would similarly be proper. (United States v. Rabinowitz, 339 U. S. 56, 60; Draper v. United States, 358 U. S. 307, 310-311.)
Could then the aforesaid arrest be maintained as valid? The arrest was made, as aforesaid, because Officer Gallery thought, when he received the headquarter’s broadcast, that defendant and his passengers had or may have committed a felony.[10] Did he have probable cause for that belief? We are persuaded that he did not. The following testimony of the officer, on cross-examination, is of interest:
“ Q. Can you tell his honor exactly the nature of the report that you received on the radio? A. Broadcast signal 1030 on West 71st Street at West End Avenue.
Q. Anything else? A. No, sir.
Q. Any description of any individuals involved? A. No, sir.
Q. Did they tell you it was more than one individual? A. No, sir.
Q. So you asked this defendant then to get into your car ? A. I . told him to get in my car.
Q. You told him to? A. Yes.”
*68 Apparently, the said broadcast did not reveal, nor did the officer have any knowledge or information, that an anto was involved in the crime. All he knew was that defendant had committed two traffic violations and that a crime was being committed or had been committed one and one-half blocks distant. This caused the officer to have a mere suspicion and nothing else — that is not enough — that is not probable cause. (Wong Sun v. United States, 371 U. S. 471; People v. Cassone, 35 Misc 2d 699, 701, supra, People v. Anonymous, 56 Misc 2d 1022, 1029.) Had the broadcast to Officer Gallery contained some identifying infor.mation, and not merely that a crime was being or had been effected, the mere suspicion may have flowered into probable cause. (People v. Wilson, 16 A D 2d 207, 210; People v. Cassese, 47 Misc 2d 1081.)
We are reminded that brief detention of a suspect for the purposes of investigation is legally permissible. However, such detention must be ‘ ‘ on-the-spot ’ ’ and without the officer exercising dominion or control of the person of the suspect so as to constitute an arrest. (See Sobel, Search and Seizure, supra, pp. 62-68.) As aforesaid, Officer Gallery, in placing defendant in his car and driving him to the scene of the alleged crime, exercised such dominion and control of the person of defendant as to constitute an arrest and thus nullified any argument that such conduct was a mere detention.
Nor does the recent case of People v. Morales (22 N Y 2d 55, 64) give us cause to hesitate, since the holding there, as the court repeatedly reminds us, was ‘ ‘ limited to the exceptional circumstances presented on this appeal involving a serious crime affecting the public safety ”. The crime there involved a “ brutal murder, ’ ’ and although the defendant was taken to a police station for questioning and could not be arrested prior thereto, the court held that the defendant’s detention there for purposes of investigation was “ a reasonable exercise of the police power ” (p. 59), because “ The public interest in questioning defendant was, therefore, great,” (p. 64). Under the circumstances there present, the questioning at the police station was reasonable police conduct (p. 63). The particular facts in our case do not compel a similar conclusion.
Further, the search here, without a warrant, was improper on other grounds and condemned by Preston v. United States (376 U. S. 364, 368) and Dyke v. Taylor Implement Co. (391 U. S. 216, 218) since when defendant’s car was taken to the vicinity of the police station house and there searched, that search was ‘ ‘ too remote in time or place to be incidental to the arrest ’ ’.
*69 Accordingly, the product of the unreasonable search and the intangible product, the incriminating statement at the station house, are suppressed. (People v. Rodriguez, 11 N Y 2d 279, 286; People v. Herbison, 22 N Y 2d 946; People v. Estrialgo, 37 Misc 2d 264, 285, supra.)

. A notice pursuant to section 813-f of the Code of Criminal Procedure had been duly served by the People at the time of arraignment.

. The affidavit was sworn to on July 24, 1968 and served upon the District Attorney on July 25, 1968. The hearing to suppress commenced on August 12, 1968.

. The attorneys for the respective parties previous to the hearing had stipulatéd that were the complainant (the owner of the credit cards) called he would testify that the cards in question were Ms property and that he did not give the defendant authority, permission or the right to possess or use the same.

. Officer Gallery stated he was advised by headquarters, prior to taking defendant to the police station, that defendant’s car was not reported stolen and that defendant did produce the ear registration at the station house. This testimony I find not creditable and find, in fact, .that both his driver’s license and registration were produced by defendant at the place he was stopped.

. Officer Gallery testified that he “ told ” defendant to get into the car, but did not then place him under arrest.

. Officer Gallery’s testimony, as to the time and place of arrest, was inconsistent. Upon cross-examination he stated he placed defendant under arrest in his police car on the way to the station house.

. Proper Miranda warnings, I find, had been given prior to such questioning.

. At another point in his testimony the officer stated that he “ put the defendant in my car.”

. Were the arrest made for the traffic offenses (even if one or more such offenses be misdemeanors), an incidental search would be impermissible. (Sobel, Search and 'Seizure, supra, pp. 119-120; People v. Marsh, 20 N Y 2d 98, 101; People v. Beaman, 44 Mise 2d 336, Ann. 10 ALR 3d 314.)

. Nor are we persuaded, by the nature of the broadcast received, that the officer had “ reasonable cause for believing that a felony has been committed ” (Code Crirn. Pro., § 177, subd. 4).