J. Irwin Shapiro, J.
The defendant applies ‘1 for an order to suppress evidence and to permit the defendant to inspect the Grand Jury minutes which resulted in the indictment herein *847 and to strike from the record and from the minutes of the G-rand Jury evidence seized in violation of the defendant’s constitutional rights and the fruits of all of said evidence and for an order dismissing the indictment”.
In support of his motion the defendant submits the testimony of the hearing in the Magistrates’ Court. The District Attorney in opposition to the motion submits the testimony before the G-rand Jury. The court has considered both sets of minutes. They are substantially the same.
The indictment charges the defendant with burglary in the third degree, grand larceny in the second degree and criminally buying, receiving, concealing and withholding stolen and wrongfully acquired property as a felony. The charges arise by reason of the alleged breaking and entering of a dwelling house on September 1, 1961.
At the hearing in the Magistrates’ Court the arresting officer testified that on September 1, 1961 at 11:00 p.m. he “ observed this defendant half carrying and half dragging a suit case along Kingston Place, between Hillside Avenue and Wexford Terrace”; that he “ watched the defendant go down Hillside Avenue ” and then saw him “ place the trunk behind the bench ” after which the defendant sat down on the bench. The detective approached the defendant, identified himself and asked him “ Where did you get the valise? ” to which the defendant stated ‘ ‘ What valise ? ’ ’ The detective then says that he informed the defendant that he had had him under observation “ for the past five minutes and that I had seen him dragging the valise toward Hillside Avenue and Tie became evasive and refused to answer any more questions and he was tahen to the 103 precinct for further investigation.”
The following also took place in the Magistrates’ Court:
“ The Coubt: Was he committing any crime at the time that you approached him? 1 ‘ The Witness : No.
“ Q. Then you had a conversation with the defendant, is that right? A. I did.
“ Q. As a result of that conversation you arrested the defendant, is that correct? A. Yes.
<£ Q. At that time that you arrested him, was he charged with any crime? A. At the time I arrested him he was not charged with a crime.
“ Q, He was not charged with any crime. Allright.
££ The Coubt: You’re not going to give me Mapp against Ohio.
“Defense Counsel: Yes, he had no reasonable cause.
*848 “ Q. At that time that you spohe to him and arrested him, did you hnow that any crime had been committed in that areat A. I did not.
“ Q. The defendant wasn’t committing any crime at that timet A. Not that I could see.
“ Q. You had no search warrant? A. No.
‘‘ Defense Counsel: Tour Honor, I move to suppress the evidence on the ground its illegal search. There is no ground to believe that any crime was being committed. He didn’t see any crime and the defendant wasn’t committing any crime at the time.
“ The Court : What do you want to do away with the Police Department?
“ Defense Counsel: No, Tour Honor.
“ The Court: This man is an expert. He is a police officer and he sees a suspicious conduct and in his mind it brings certain facts together which to his trained nose, tells him something is wrong. All he needs in a felony is suspicion.
1 ‘ Defense Counsel : Crime has to be committed. Has to know of a crime being committed.
“ The Court: Motion denied.”
The record both before the Magistrates ’ Court and before the Grand Jury makes it crystal clear that at the time that the defendant was arrested by the police they did not know that the burglary charged in the indictment had been committed, nor indeed of the commission of any felony by any one dealing with the articles contained in the valise then possessed by the defendant. The police officer frankly admitted that the defendant was not committing any crime when he placed him under arrest and took him to the station house for further investigation. It was after the questioning of the defendant at the station house that the police first learned that the contents of the valise were stolen and were the proceeds of a burglary.
Under such circumstances the arrest was illegal and therefore the facts revealed by the search after such unwarranted and improper arrest may not be utilized against the defendant.
A prior unlawful arrest may not be justified by what is subsequently discovered in a search. It is only when the arrest itself is legal that the search made concomitantly therewith is legally permissible. It is not the law, as the Magistrate seemed to believe, that if a police officer “ sees a suspicious conduct and in his mind it brings certain facts together which to his trained nose, tells him something is wrong ’ ’ that he may make an arrest and that “ all he needs in a felony is suspicion ” “ The right of the people to be secure in their persons, houses, papers, and *849 effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or-affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” (U. S. Const., 4th Arndt.) is not satisfied by the “ trained nose ” of a policeman no matter how keen his sense of smell may be. Any evidence discovered as a result of the violation of the Fourth Amendment of the Constitution is now constitutionally tainted and inadmissible in a State court. (People v. Loria, 10 N Y 2d 368, 372.)
The validity of an arrest depends upon the existence of probable cause to make the arrest. In this case the police officer did not know that a burglary had in fact been committed nor did he have probable cause to believe that any felony had been committed and therefore he had no probable cause to arrest the defendant (People v. Ward, 32 Misc 2d 843), since what the defendant was doing did not constitute the commission of any crime in his presence. The probable cause “ cannot be based upon evidence obtained as a result of the search, when the validity of the search itself depends upon the legality of the arrest ” (People v. Loria, supra, p. 373), for “ A search prosecuted in violation of the Constitution is not made lawful by what it brings to light ”. (Byars v. United States, 273 U. S. 28, 29; Henry v. United States, 361 U. S. 98, 104.)
In the light of the foregoing and the duty of all courts everywhere in the land to obey the mandate laid down by the Supreme Court of the United States in Mapp v. Ohio (367 U. S. 643), decided June 19,1961, this court has no alternative except to suppress the use in this proceeding of the articles seized by the police. That a guilty defendant may escape the hand of the law is unfortunate, but this court may not subvert the Constitution of the United States to achieve what may seem to be, in an individual case, a desired result.
Ours is not a police state. We are a government of laws and not of men. The “ trained nose ” of a gendarme is not an adequate substitute for the United States Constitution.
The motion to suppress is granted. Since, without the articles suppressed, the People have no case, the indictment is dismissed.