Mitchell D. Schweitzer, J.
On February 4,1963, New York City police, acting on information that an unknown person would be carrying a sawed-off shotgun in the vicinity of Jerry’s Luncheonette, on West 45th Street, placed the area under surveillance. A group of five people gathered outside that diner, and one of them carried a green shoe box which was at least large enough to contain the weapon. Subsequently, the defendant, carrying an attache case, joined the group, and they all entered the restaurant and seated themselves in adjoining booths. The police followed the suspects inside, identified themselves, and an innocuous interrogation ensued. However, Officer Lehane noticed the previously observed attache case resting on the floor next to the defendant and asked Chitty whether the case belonged to him. The defendant emphatically denied any knowledge or connection with it, and the five other members of the group expressed a similar unawareness as to whom the attache case belonged. Officer Lehane replied, ‘ ‘ Well then, this must be lost property,” and opened the case. Inside, he observed a substance which he believed to be marijuana.
Significantly, no arrest of the defendant was made at this time. The group was ordered out of the booths and the green *581 shoe box was located and searched. Inside the shoe box was the sawed-off shotgun. At this point, the defendant, apparently fearing inculpation on a gun charge, told Lehane: ‘ ‘ Hey, listen, officer, I have no part of this gun. I admit I brought the attache -the attache case is mine, I brought it in here. I got no part of this gun. ’ ’ The defendant then added gratuitously that he knew that marijuana was concealed in the attache case, and that he had been paid to deliver it. It was at this point that the defendant was arrested.
Observing the futility of his original disclaimer, the defendant -now seeks to re-establish an interest in the attache case and thereby suppress the introduction of its contents into evidence.
At the outset, it is clear that the police did not have probable cause to search the attache case, despite the informer information in their possession, nor could they have lawfully arrested the defendant prior to the discovery of the case’s contents. Nevertheless, it is equally clear that the defendant’s specific denial of possession effected an abandonment of the property, and subjected the attache case to summary search and seizure.
Abandonment depends upon an intention to relinquish property, accompanied by some act or omission which carries the implication that the possessor neither claims nor retains any interest in the subject matter (Foulke v. New York Cons. R. R. Co., 228 N. Y. 269; 1 N. Y. Jur., Abandoned and Escheated Property, § 5). Thus, when a person physically throws away property (Hester v. United States, 265 U. S. 57), or when he leaves property behind in a wastepaper basket after checking out of a hotel room (Abel v. United States, 362 U. S. 217), the intent to abandon is clear and obvious. While in the instant case the defendant did not physically discard the attache case, a similarity exists, not in the means used, but in the intent shown. Here, the defendant knowing the illegal nature of the case’s contents and knowing that tracing the contraband to him would result in his arrest, attempted to sever any connection between the narcotics and himself. The method he chose was a denial in the face of police interrogation, in much the same way as a fleeing suspect throws away evidence in the face of police pursuit. Each seeks to avoid capture with incriminating evidence in his possession. Chitty adopted the only practicable means of relieving himself of responsibility without arousing police suspicion, but the intent to abandon is not denigrated by the subtlety of the method employed. Furthermore, the completely credible police testimony reveals that the defendant was aware of the illegal contents of the attache case. Such a factor may reasonably lead this court to infer an intent to *582 abandon the incriminating material, in much the same way as a court may indulge an inference against a voluntary consent to a search where the individual knows that damaging evidence will be discovered (United States v. Dornblut, 261 F. 2d 949; United States v. Martin, 176 F. Supp. 262; People v. Kortwright, 236 N. Y. S. 2d 385). Indeed, no other conclusion may logically attend the defendant’s disclaimer under the circumstances of this case, and his verbal discarding of the attache case leaves him without an interest or right in its contents, as well as depriving him from successfully maintaining this motion (People v. Exum, 382 Ill. 204; People v. Woods, 26 Ill. 2d 557; People v. Hall, 27 Ill. 2d 501).
While the defendant urges that People v. Brown (32 Misc 2d 846) controls the case at bar, it is clear that the instant facts are distinguishable. In Brown, a police officer saw the defendant dragging a valise along the street. He eventually placed it behind a bench and sat down. The officer asked him about the valise, and the defendant answered: “ what valise? ” There was further conversation during which the defendant “became evasive and refused to answer.” He was thereupon placed under arrest and the valise was seized. The court ruled that the arrest was unlawful and therefore the evidence was illegally seized. However, in Brown the defendant did not abandon his valise. Nothing in that case approaches the deliberate denial of ownership found in the instant case, and the facts of Brown indicate that the defendant was intent on concealing the valise. He never denied possession. Moreover, Brown was placed under arrest before the valise was inspected, and his arrest was thus held to be without probable cause. Here, the defendant was not arrested upon the discovery of the narcotics in the case. It was only after he confessed his guilt that he was taken into custody at a time when the officers certainly had probable cause to arrest him without a warrant. His admissions, moreover, were not induced by illegally seized evidence, but rather by his desire to avoid any connection with the sawed-off shotgun also recovered in the luncheonette.
In sum, the defendant herein chose the path of denial and in doing so created a situation in which the police found themselves in possession of property unclaimed by the defendant. Thus, Chitty deliberately ejected the attache case from the circle of protection drawn by the Fourth Amendment, and consequently the motion to suppress must be denied. Submit order.