Richard J. Sherman, J.
The September 1963 Grand Jury of the County of Saratoga handed down an indictment against the three defendants charging them with the crime of burglary in the third degree, grand larceny in the first degree and possession of burglars’ instruments. On October 14, 1963 a motion by defendants was granted for a severance between the first and second counts and the third count of the indictment, thus severing the charge of possession of burglars’ instruments from the other two charges. On October 24, 1963 Honorable Michael E. Sweeney, Supreme Court Justice, signed orders to show cause in behalf of each defendant as to why orders should not be granted suppressing certain evidence from being used in the trial of any criminal action, upon the grounds that it was allegedly seized by an illegal search and seizure. At the hearing on October 28,1963 the court advised as follows: “ Mr. District Attorney, the burden of proof having shifted to you on the question of fact raised by an order to show cause in each case, you will produce the evidence at this time, please. ”
This is a moot case and it is necessary to review the evidence to some extent.
Joseph Thomas Bezey was the proprietor of the Oak Grove Motel located in the Town of Ballston, Saratoga County. On June 12, 1963 after 11:00 p.m., a car drove into the front yard of the motel. Bezey turned on the motel lights and started to walk toward the car and by that time a man got out of the car and walked toward Bezey. This man wanted a room for three men. The man came in the office and registered as John Page; *30 later identified as the defendant Le Veille. The proprietor subsequently wrote down the license number of the car (18D 7646) on the registry card; later identified as registered in the name of Doris Kravetz. Booms 12 and 14, connecting rooms, were assigned to the three men. They backed the ear in front of room 12, opened the trunk of the car, removed a bundle of some weight and carried it into the room. They shut the blinds and turned on the light, and an hour later, they left in the car. They had left the light on. Proprietor Bezey then entered the room by passkey to see if everything was all right. There was nothing in the rooms in the way of personal effects or baggage. The proprietor checked to see if there was anything burning or hazardous, when he saw a white cloth in the waste basket. He was going to empty the waste basket and went to lift it. “ It kind of threw me,” he testified, “ so then I looked at the cloth and opened the top a little. It was full of money,” consisting of bills and coins. He returned to the motel office, and called the State Police at about 1:00 a.m. Troopers Hungerschafer and La Plant responded in about fifteen minutes. The proprietor explained the situation to the troopers. The proprietor Bezey then opened the door- to the rooms with a passkey and showed the mofiey to the troopers. The troopers advised him to lock up the rooms and all left. About 2:00 o’clock the car returned. The witness Bezey identified the three defendants.
Trooper William B. Hungerschafer testified that he was aware a burglary had been committed at the Edison Club, as the result of reading a File 7 teletype message at the barracks. He was on duty when the call came from Mr. Bezey, so he and Trooper La Plant went to the motel at approximately 1:20 a.m. Mr. Bezey reported what he had found in rooms 12 and 14 and then Bezey let the troopers into the rooms with a passkey. There they found a wastebasket containing a quantity of money in bills and coins. In the dresser drawer, they found a cup full of pennies. The rooms were then secured and the troopers retired to the motel office. About 1:30 a.m., a car drove up and backed up to room 12. It was semi-dark with lights of the motel on. The troopers drew their revolvers and walked toward the three persons who had gotten out of the car. Kravetz was at the door. The three defendants were then lined up and frisked. Kravetz produced a driver’s license, but the other two had no means of identification except to say they were Tessitore and Le Veille. When asked about the money, all three denied knowledge of any money in the motel rooms.
The trooper stated he put his flashlight into the car and there saw a bunch of tools. The trooper asked who had the key to *31 the room and was told by Kravetz he had it. Then the trooper said, “ Well, let’s go into the motel and take a look at the money.” Kravetz unlocked the door and all five entered. Investigator Bryan of the State Police arrived at 1:45. The defendants continued to deny any knowledge of the money. At about 2:20 or 2:30 a.m., all six (three members of the State Police and the three defendants) arrived at the Malta Barracks where each defendant was placed in a separate room and questioned. The money was counted by the troopers in the presence of Tessitore whereupon Tessitore is said to have asked how much money the troopers had. The following conversation then took place, according to the witness Hungerschafer: “ I told him $520.00. He said, 1 If that’s all the money you got you better go down and check the motel again, I don’t want that son of a bitch of an owner to make any money on this deal.” Later, they went to the motel with the three defendants and discovered $288 in the bed. The defendants were then taken before a Justice of the Peace and charged with vagrancy.
Trooper Hungerschafer on cross-examination stated he believed Investigator Bryan placed the three defendants under arrest when they left the motel after the search of the rooms had been made.
The various constitutional provisions and sections of law applicable to this case are: Amendment IV and Amendment V of the United States Constitution, section 12 of article I of the New York State Constitution, and section 8 of the Civil Bights Law, and sections 813-c and 813-d of the Code of Criminal Procedure.
In People v. Estrialgo (37 Misc 2d 264, 282) the court stated that “The cases all turn on whether probable cause is thus obtained to make a lawful arrest and a reasonable incidental search.”
When both the fact of felony and the person who committed it are known before arrest to the officer, probable cause exists as a matter of fact, even though the crime is not committed in the officer’s presence. (Code Crim. Pro., § 177, subd. 2.)
There must be some evidence amounting to justifiable suspicion with respect to identity of the felon before an arrest. (Code Grim. Pro., § 177, subd. 3.)
In the case of People v. Chitty (40 Misc 2d 580), the court, on page 581, said: “Nevertheless, it is equally clear that the defendant’s specific denial of possession effected an abandonment of the property and subjected the attache case to summary search and seizure.”
*32 It was stipulated in this case that no search warrant was obtained. The defendants state that the case falls within the holding of Mapp v. Ohio (367 U. S. 643). The protection of section 813-c of the Code of Criminal Procedure is claimed, as well as a violation of section 8 of the Civil Rights Law and section 12 of article I of the New York State Constitution.
This court is mindful of the language contained in the case of McDonald v. United States (335 U. S. 451, 455), where it was stated: “ The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposejd a Magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. ’ ’
For the following reasons, the motion of each defendant to suppress evidence is denied:
1. The State Police had knowledge that a felony had been committed.
2. At the time the police searched the rooms, they did so at the invitation of the motel proprietor who let them in with a passkey.
3. Defendant Kravetz opened the door to room 12 at the express invitation of the trooper who said: “ Let’s go in and see about the money.”
4. The defendants denied all knowledge of the money. Therefore, the money is ¡to be considered abandoned property and a search is warranted under the circumstances.
5. There was an emergency; based upon the time schedule of events.
6. Defendant Tessitore advised the trooper to go back to the room and look for more money.
7. The investigation was proper and within a reasonable time.
8. The search was not unreasonable under the circumstances.
9. There was a probable cause for the search to be made.
10. There was a justifiable suspicion as to the identity of the three defendants.
11. The false registration in and of itself would warrant an investigation, takbjig the other facts into consideration.
It would seem that the present case distinguishes itself from the cases cited by the defendants.