David T. Gibbons, J.
This is a motion to suppress certain physical evidence alleged to have been obtained by an illegal search and seizure by the police on or about August 20 and 21 1967, and to preclude the District Attorney from using evidence obtained as a result of any observations made or knowledge obtained during the course of, or as a result of, said search and seizure. (Code Crim. Pro., § 813-c et seq.)
The court makes the following findings of fact and conclusions of law:
Patrolman Robert Putko was on radio motor patrol on Hemp-stead Turnpike on August 20, 1967. He testified that at about 11:30 p.m. on that night he observed a 1960 Rambler station wagon speeding westbound on Hempstead Turnpike, and passing cars on the right. He was on duty at that time with Patrolman Walter Yerkes. He pulled this vehicle over to the side in the vicinity of Meadowbrook Hospital on Hempstead Turnpike.
The car was occupied by the defendants, D, the operator, and A and S, passengers. WTien the vehicle stopped he walked to the driver’s side of the vehicle and Patrolman Yerkes walked to the right side of the automobile. Patrolman Putko asked the operator for his license and registration. He said that he *1024 directed the beam of his flashlight into the car as a courtesy to assist the operator in finding his papers. The latter produced them. An examination of the registration indicated that it had expired.
He testified that while flashing his search light he looked in and observed what he called a cash drawer lying on the front floor of the car, on the passenger side, and that the passenger was trying to push it with his foot. The object referred to by the police officer was not in fact a cash drawer but a removable tray generally used to separate coins. He asked the passenger what he was doing and the passenger said, “nothing”. He asked the driver what the tray was doing there and the driver said that they had used it to hold change in a card game from which they were then returning. Patrolman Yerkes then asked the boys to identify themselves which they did. The policeman also observed some coins in open view on the rear floor of the car. Defendant D told Patrolman Putko that the coins represented their winnings. Patrolman Putko requested the occupants to leave the car. He testified on cross-examination that he asked them to get out of the car so that he could see what the passenger was trying to secrete. Patrolman Yerkes testified that he saw the tray for the first time after the passengers were requested to leave the car. The court finds that the tray was not visible until after the defendants left the car. After they stepped out, they were all frisked. D told the other boys that they did not have to say anything. The car was searched and the tray and the coins were taken by the police. The police stated that the vehicle was to be impounded and then took all three occupants of the ear to the station house together with the coins and the tray. They turned these items over to the detective, Meditz.
Up to the time that the police officers stopped the boys, searched the car and took the boys in, they had not had any report of any burglaries, and officer Putko testified that the vehicle then being operated by the defendant D was not stolen.
Patrolman Yerkes testified that when they began to search he did not know what they were looking for. In addition, he testified that the defendants were under arrest at the scene. He said that they were arrested for an unregistered vehicle and they were taken in for investigation. He claims that while no one said they were under arrest at the scene, they were not at liberty to leave.
On the other hand, officer Putko testified that the defendant D was free to leave and that he was brought to the station house for the purpose of being served with the traffic summons, *1025 because, as he said, “ the reason it wasn’t done out in the street is because with everybody around you are not going to sit down and issue four summonses. They are lengthy to write ”.
The court finds that the defendants were under arrest at the scene, and that the items which are the subject matter of this hearing were seized at the time of the arrest and taken into the control and placed under the dominion of the police before the car was impounded.
The court also finds that the three defendants were arrested and the search of their persons and of the car took place before the police, apart from the alleged traffic violations, knew of any crime, and that the delay in issuing summonses to the defendant D was merely a contrivance to seek out the commission of a possible crime.
The officers at no time advised the boys of their rights. Thp defendants were told that they were being taken in for an investigation about 11:40 p.m. They arrived at the station house about 12:30 a.m., and up to that time the patrolman had not issued any summonses. Officer Putko stated that he was the arresting officer and that summonses were to be issued to defendant D for traffic violations at the station house. Although the officer said that his attention was drawn to the car which he estimated to be speeding at about 55 miles per hour, he at no time issued a summons for speeding. Instead, he gave summonses for (1) unregistered motor vehicle; (2) no insurance; (3) no signal when changing lanes, and (4) passing on the right.
Richard Meditz, a Nassau County detective, testified that he was assigned to investigate a burglary at a restaurant at 2419 Hempstead Turnpike on August 20, 1967. He had a conversation with defendant S at the squad room. He said he took out a slip of paper and read the Miranda warnings. He questioned S about the burglary at that restaurant. He testified that the cash tray and the coins were on the desk before them and that he made reference to them during the interrogation which ultimately resulted in an oral inculpatory statement by the defendant S in which he implicated the defendants D and A. This statement was later reduced to writing after which S was placed under arrest. The detective, after advising A of his rights, showed S’ statement to A. Upon seeing S’ statement, A also gave an inculpatory statement, which was also given in the presence of the coin tray and the coins to which the detective made reference in his interrogation. It was reduced to writing and signed by A who was then placed under arrest with the defendant D. Defendant D gave no statement.
*1026 It is noted that the coin tray marked in evidence is an unimposing looking black metal portable item, partitioned into several compartments for the separation of various denominations of coins. The coin wrapper is a gray piece of paper, and the coins are pennies, nickels, dimes and quarters with no particular distinguishable characteristics, and total $8.21.
The physical evidence sought to be suppressed was obtained as a result of an illegal search and seizure. (Mapp v. Ohio, 367 U. S. 643.) The resulting statements of the defendants, S and A, being therefore tainted, are inadmissible and are likewise to be suppressed. (People v. Ressler, 17 N Y 2d 174, 179.)
When the motor vehicle in which these defendants were riding was pulled over by the police, it was stopped solely in relation to alleged violations of the Vehicle and Traffic Law. The police officer said that he observed the car being driven in a dangerous manner and at an illegal rate of speed of about 55 miles per hour.
Under the circumstances, it was the duty of the police to stop the car and perform that which was required to enforce the traffic laws of this State. They properly requested the operator’s license and the car’s registration. (Vehicle and Traffic Law § 401, subd. 4; People v. Hoffman, 24 A D 2d 497.)
Essentially, the principal question presented is whether, under the circumstances of this case, the police had the legal right to search the vehicle and seize the items which are the subject matter of this proceeding.
After this vehicle was stopped upon the highway, and after the operator, the defendant D, produced his license and registration upon the request of officer Putko, the latter was confronted with a motorist who at most could be charged with several violations of the Vehicle and Traffic Law. From his on-the-scene observation, and inspection of the license and registration, he knew and he admitted in this hearing that the motor vehicle was not stolen, and that he had no report of any recent burglaries. Apart from these traffic violations he and his partner had no probable cause to believe that any crime had been committed.
It has been repeatedly held that a search incidental to an arrest for a crime is limited to the fruits of the crime, or to the instrumentalities used in the commission of the crime for which the arrest is being made.
Inasmuch as there are none, and there can be no fruits of a traffic violation, there can therefore be no incidental search in connection with such offense.
In People v. Marsh (20 N Y 2d 98, 101), Chief Judge Fuud writing for the Court of Appeals, stated this rule as follows:
*1027 “ Although, as a general rule, when an individual is lawfully-arrested, the police officer may conduct a contemporaneous search of his person ‘ for weapons or for the fruits of or implements used to commit the crime ’ (Preston v. United States, 376 U. S. 364, 367), we do not believe that the Legislature intended the rule to cover arrests for traffic violations. It is obvious that, except in the most rare of instances, there can be no “fruits” or “implements” of such infractions and the search, to be upheld, would have to be justified as one for weapons. But there is something incongruous about treating traffic offenders as noncriminals, on the one hand, and subjecting them, on the other, to the indignity of a search for weapons ”. (Italics supplied.)
Justice Nathan B. Sobel of the New York Supreme Court, in his treatise “ Current Problems in the Law of Search and Seizure ” at page 120, makes the following observation, “ There are no fruits or instrumentalities of the £ crimes ’ of unlawful parking, speeding, driving without registration or license, or driving while intoxicated- (an exception exists with respect to the latter in permitting search for open bottles of liquor). Since there are no fruits or instrumentalities of such crimes there can never be a reasonable incidental search no matter how lawful the 1 arrest ’ ”.
Although an arrest for a traffic violation may be made by virtue of section 177 of the Code of Criminal Procedure, such arrests allows for no incidental search. (People v. Marsh, supra.)
Not only is this the rule in this State, but is likewise followed in other jurisdictions (People v. Erickson, 31 Ill. 2d 230; State v. Scanlon, 84 N. J. Super. 427; People v. Zeigler, 358 Mich. 355; see, also, Ann. 10 ALR 3d 314).
Notwithstanding that the traffic violations here may involve misdemeanors under the Vehicle and Traffic Law, absent a showing of greater criminality, such as grand larceny for car theft or other serious crimes as distinguished from violations of the Vehicle and Traffic Law, the search was unreasonable, (cf. People v. Wright, County Court Nassau County, Oppido, J., Dec. 20, 1967.)
There is no uniform rule to govern all incidental searches in relation to valid arrests. Each case must rest upon its surrounding circumstance and the nature and gravity of the offense involved before a search is warranted. (People v. Watkins, 19 Ill. 2d 11, 18 which is cited with approval in People v. Marsh, supra.)
*1028 Had it appeared that the car was in fact stolen, or had the police observed therein any weapons or contraband in open view, probable cause existing for an arrest for those crimes, an incidental search contemporaneous with such arrest would have been justified. (People v. Russo, 38 Misc 2d 957 [loaded sawed-off shotgun]; People v. Isaac, 38 Misc 2d 1018 [marijuana].)
Such was not the fact in the matter now under consideration, and for that reason this case is distinguishable. Concedely, after the car was stopped and a cursory inspection was made by the police- with their flashlights, neither contraband nor weapons were revealed.
The observation of some coins on the floor of the automobile and that one of the occupants seated in the front made a movement as though to push something under the seat, does not provide the officers with the required probable cause to believe that a felony had been committed and that these defendants were its perpetrators. (People v. Anonymous, County Ct., Suffolk County, McInerney, J., N. Y. L. J., April 25, 1963, p. 20, col. 3.)
This court finds that the presence of the coin tray, the coins, and the alleged movement of the passenger, so observed, do not give rise to such probable cause, and this would be so even if these and the coin tray were seen in open view before the occupants were ordered from the ear. Actually, the police officer did not seriously entertain such belief, because he made no attempt to arrest the occupants of the car for any felony at that time.
Instead, he arrested and took all of them into custody at the scene, presumably, from his testimony, for “ expired registration ” and “ speeding ”. Although the operator of the car, D, would be the only person against whom charges for such traffic law violations could be made, he chose to arrest all three persons.
This arrest was but a pretext to search the car. Upon ordering the occupants out of the car, he was able to observe and seize the cash tray. (Taglavore v. United States, 291 F. 2d 262; People v. Sapp, 43 Misc 2d 81.)
This conclusion is fortified by the concession of the police officer Putko that up to the time when they stopped the defendants, searched the car and took them to the police station, they had not received any reports of any burglaries.
Officer Yerkes confirmed that they had embarked upon a general search. He stated that when they began to search he did not know what they were looking for.
*1029 This case presents the situation of an arrest and search based on suspicion with no probable cause. (People v. Brown, 32 Misc 2d 846; Sellars v. State, 237 Md. 58.)
The fact that the later turn of events established some basis for the suspicion is of no moment. An arrest and search cannot be countenanced if they are based on mere suspicion, since this would lead to wholesale violation of the constitutional rights against unreasonable search and seizure as guaranteed by the Fourth Amendment of the Constitution of the United States.
A search is not made legal or reasonable by what it turns up, since under the established law it is good or bad when it starts. (United States v. Di Re, 332 U. S. 581. Byars v. United States, 273 U. S. 28; Henry v. United States, 361 U. S. 98.)
The court having determined that the initial search and seizure herein were unreasonable and therefore illegal, it follows that defendants ’ motion to suppress said physical evidence must be granted, and since the inculpatory statements of the defendants S and A came about as a direct result of such illegality and made with specific reference to the illegally seized items, it follows, as a matter of law, that these tainted confessions must also be suppressed. (People v. Rodriquez, 11 N Y 2d 279; People v. Ressler, 17 N Y 2d 174, 179; Wong Sun v. United States, 371 U. S. 471; Fahy v. Connecticut, 375 U. S. 85; and United States v. Gorman, 355 F. 2d 151.)
It is therefore ordered that the defendants ’ motion to suppress physical evidence and to suppress the alleged confessions as inadmissible be and the same is hereby granted in all respects.