Theodore S. Kasler, J.
On January 22, 1968, the defendant, John Paul Mazzone, was arrested for failing to produce an operator’s license, a traffic misdemeanor, by Patrolmen Pelletier and Eadwan, who were on routine patrol in a City of Buffalo police car.
Patrolman Pelletier testified that the defendant was driving west on Best- Street in the City of Buffalo, New York, made “ a motion to turn up Hasten Street, the wrong way ” '(Hasten being a one-way street), did proceed the “ wrong way ” for a short distance on Hasten, and then, for some reason, turned his automobile around and resumed his journey on Best Street. Subsequently, he was stopped for a “ car check ” by Officers Pelletier and Eadwan.
Officer Pelletier requested the defendant to produce his operator’s license and motor vehicle registration. He did produce his motor vehicle registration, but could not produce his operator’s license, allegedly stating to Officer Pelletier that he had left it at home. Upon the defendant’s failure to produce his operator’s license, he was told that he would have to be taken to the station house and that he was under arrest for not having *286 an operator’s license, whereupon, according to Officer Pelletier, “ he got mouthy with us ”.
On cross-examination, Officer Pelletier .stated that the defendant may have been “ patted down ” at the time of arrest, but he was not searched. Ultimately he was handcuffed and transported to the station house in the police car.
During the “booking” procedure at the station house, he was directed by Officer Pelletier to empty his pockets. "While in the process of emptying his pockets, he produced a slip of paper, which Officer Pelletier immediately determined was a betting slip, and, when the defendant had completed the procedure, Officer Pelletier made his search and found approximately six other betting slips.
The question before this court is whether a police officer may conduct a search of the person of a defendant taken into custody for violation of a traffic misdemeanor statute.
It is a matter of law that ‘1 a police officer is not authorized to conduct a search every time he stops a motorist for speeding or some other ordinary traffic infraction.” (People v. Marsh, 20 N Y 2d 98, 100.)
The question presented in that case was whether a search could be conducted, as incident to a lawful arrest, when a defendant is taken into custody for a traffic violation, on a warrant of arrest, following his failure to appear in court pursuant to the summons initially issued. The Court of Appeals stated that they found no basis for making such a distinction, on the ground that it would not only offend against the legislative design for the treatment of traffic offenders, but would also exceed constitutional limits on search and seizure.
The Marsh decision (supra) did not decide whether this rule of law is applicable to traffic misdemeanors, nor did it decide whether a search is permitted pursuant to Police Department Rules and Regulations to search all parties during the “ booking ” procedure.
This court has read, and is not persuaded by, the decision in People v. Anonymous A (56 Misc 2d 1022) wherein it was held: ‘ ‘ police officers, who, after stopping automobile .speeding on turnpike, found that registration had expired, who had no report of recent burglaries, and who, apart from alleged traffic violations, were not investigating any crime, lacked probable cause for arrest of occupants and search of automobile yielding coin tray and approximately $8 in coins, and such evidence was thus subject to .suppression.”
The reason for rejecting this case as authority is that the facts and circumstances were entirely different from the instant *287 case, and further, that this court disagrees with the conclusion that a search is not permitted after an arrest for a traffic misdemeanor.
The first question to be resolved in the case at bar is whether there was a valid arrest on the part of Officer Pelletier. His authority is derived from section 401 (subd. 4) and section 501 (subd. 1, par. e; subd. 10) of the Vehicle and Traffic Law of the 'State of New York.
An examination of the statutes will show that Patrolmen Pelletier and Radwan had the authority" to stop the car for a car check (Vehicle and Traffic Law, § 401, subd. 4), had authority to demand the production of the operator’s license (Vehicle and Traffic Law, § 501, subd. 1, par. e), and the failure on the part of the defendant to produce same immediately gave rise to the statutory presumption that he was not duly licensed to operate a motor vehicle (Vehicle and Traffic Law, § 501, subd. 10), thereby creating a basis for the arrest.
The second, and most important, problem in this case, is the authority of the police to search. The criterion for conducting searches without warrants is stated as follows in United States v. Rabinowitz (339 U. S. 56, 65-66): “ The mandate of the Fourth Amendment is that the people shall be secure against unreasonable searches. It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required. * * * The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances ■ — the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual’s right of privacy within the broad sweep of the Fourth Amendment.”
This court has examined all the facts and circumstances of the case pursuant to the mandate of United States v. Rabinowitz (supra), and, in addition, has examined the rules and regulations of the Police Department of the City of Buffalo, New York, to further substantiate the reasonableness of the conduct of Officer Pelletier in the light of his experience and training.
The unanimous affirmance in the case of Harris v. United States (390 U. S. 234, 235-236) presents an analogous situation *288 to the instant case, where a discovery of evidence was made pursuant to a police regulation providing for the protection of property. The text of the pertinent portion of the decision is as follows:
“A regulation of the Metropolitan Police Department requires the officer who takes an impounded vehicle in charge to .search the vehicle thoroughly, to remove all valuables from it, and to attach to the vehicle a property tag listing certain information about the circumstances of the impounding. Pursuant to this regulation, and without a warrant, the arresting officer proceeded to the lot to which petitioner’s car had been towed, in order to search the vehicle, to place a property tag on it, to roll up the windows, and to lock the doors. The officer entered on the driver’s side, searched the car, and tied a property tag on the steering wheel. 'Stepping out of the car, he rolled up an open window on one of the back doors. Proceeding to the front door on the passenger side, the officer opened the door in order to secure the window and door. He then saw the registration card, which lay face up on the metal stripping over which the door closes. The officer returned to the precinct, brought petitioner to the car, and confronted petitioner with the registration card. Petitioner' disclaimed all knowledge of the card. The officer then seized the card and brought it into the precinct. Returning to the car, he searched the trunk, rolled up the windows, and locked the doors.
41 The sole question for our consideration is whether the officer discovered the registration card by means of an illegal search. We hold that he did not. The admissibility of evidence found as a result of a search under the police regulation is not presented by this case. The precise and detailed findings of the District Court, accepted by the Court of Appeals, were to the effect that the discovery of the card was not the result of a search of the car, but of a measure taken- to protect the car while it was in police custody. Nothing in the Fourth Amendment requires the police to obtain a warrant in these narrow circumstances.
44 Once the door had lawfully been opened, the registration card, with the name of the robbery victim on it, was plainly visible. It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. Ker v. California, 374 U. S. 23, 42-43 (1963); United States v. Lee, 274 U. S. 559 (1927); Hester v. United States, 265 U. S. 57 (1924).” (Italics supplied.)
*289 When the defendant was brought into the station house of Precinct Six, the search was conducted pursuant to a rule and regulation of the Buffalo Police Department, No. 5.0, Searching Prisoners.
Rule No. 5.3 reads: “ Primary Responsibility. The officer bringing the prisoner to the desk for booking, whether he be the arresting officer, or another, shall be responsible for the thorough search of the prisoner, and the removal from him of all property except his clothing.”
Rule No. 5.6 reads: “ Extent of Search.
a. Searching officer must take special care in the searching of prisoners, particularly to determine if the prisoner has secreted a knife, gun, or other weapon upon his person.
b. Any object which a prisoner might deface cell block walls or injure himself or another, or aid him in escape from custody, shall be removed.
c. 'Searching officers shall remove hat pins, or other articles worn or carried, which could be used as weapons, and shall thoroughly search all bags, bundles, purses, or other removable property.”
An examination of the hearing record will reveal that Officer Pelletier followed the rules and regulations to perfection, and, in fact, the defendant was told to empty his pockets prior to the search by Officer Pelletier, and only after the defendant, by his own act, revealed the betting slip, did Officer Pelletier commence a more thorough search of his person.
Upon all the evidence in this case, it is apparent that the defendant was validly arrested for a traffic misdemeanor. He was validly taken into custody. He was searched during the “booking” procedure at the station house, for the purpose of the policemen’s protection and for the protection of his person and his property, as well as the property of the Police Department. Incriminating evidence was disclosed by a valid search, for purposes other than mere search, and such evidence fell into the plain view of a police officer rightfully in a position to have that view (Harris v. United States, supra). It necessarily follows that in cases where the police officer has the option of issuing a summons or making a summary arrest for a traffic misdemeanor, and he chooses to make the arrest, and circumstances are such that the person must be taken into custody, he may be “ frisked ” at the scene, but the formal search must be conducted pursuant to the rules and regulations of the Police Department, for the reasons stated therein, at the place designated for “ booking ” of prisoners.
The motion to suppress is denied in all respects.