Charles V. Martabano, Esq. Village Attorney, Mount Kisco
You have asked whether the Village of Mount Kisco is authorized to retain money seized by the village police force pursuant to a search warrant.
You have indicated that a double homicide occurred in the Village of Mount Kisco on February 8, 1980. As part of the homicide investigation, the Mount Kisco police obtained a search warrant to search the apartment of one of the homicide victims who was a suspected narcotics dealer. The police found narcotics and cash totaling $244,560, most of which was in small denominations. The police confiscated the money and placed it in a bank vault rented by the Village of Mount Kisco.
The homicide victim had lived in the apartment with his wife. The wife has disclaimed any knowledge of or title to the funds. The police have decided not to prosecute the wife. Since her husband obviously cannot be prosecuted, there has been no judicial determination as to whether the cash represented proceeds from the illegal sale of narcotics.
The Internal Revenue Service has served the village with a notice of levy against the deceased man for an amount in excess of the cash found by the Mount Kisco police. The Internal Revenue Service has asserted that decedent owed taxes of $250,000 for income received in the one month prior to his death.
You have asked whether Mount Kisco is entitled to retain these funds despite the existence of the Federal lien. In light of the competing claims between the village and the Federal government, we suggest that you seek a judicial determination as to the nature of the property and the rights of the respective parties. Since your request necessarily involves the resolution of factual allegations, it would be improper for us to reach a conclusion as to whether you should retain or return the money.
However, we will try to address the issues raised by your request.
Under the facts that you have set forth it appears that the money is either abandoned property, contraband or property in possession of decedent at the time of his death.
You have indicated that decedent's wife has disavowed knowledge or ownership of the money. Therefore, if the deceased's representative has not made a claim for the money, the money might be abandoned property. Abandonment depends upon an intention to relinquish property accompanied by some act or omission which carries with it the implication that the possessor neither claims nor retains any interest in the subject matter (People v Chitty, 40 Misc.2d 580 [Sup Ct, N Y Co, 1963]; Foulke v NewYork Cons. R.R. Co., 228 N.Y. 269 [1920]; 1 N Y Jur, Abandoned and Escheated Property § 5). The denial of ownership in the face of police interrogation is sufficient to constitute an abandonment (People vD'Ambrosio, 28 A.D.2d 1130 [2d Dept, 1967]; People v Chitty, supra). The failure of decedent's personal representative or his wife to assert a claim to the funds is probably sufficient to constitute an abandonment.
Article 7B of the Personal Property Law (PPL) provides the procedures to be followed in dealing with abandoned property and the priority of those entitled to it. Section 251 (3) expressly provides that abandoned property is "presumed to be lost property and such presumption shall be conclusive unless it is established in an action or proceeding commenced within six months after the date of the finding that the property is not lost property". Therefore, the procedures applicable to lost property apply to abandoned property. Where the property is found in a village, the property must be deposited in the village police station (PPL, § 252 [1]). The police must then give notice to "the occupant of the premises where the property was found" and to any person whom they "have reason to believe * * * has an interest in [the] found property" (PPL, § 253 [3] and [4]). We assume that proper notice has been given to the wife and decedent's personal representative.
Lost property having a value in excess of $10 must be kept in police custody for three years, unless it is delivered to the owner during that period (PPL, § 253 [7]). If the money is not delivered to the owner within three months before the expiration of the three-year period, section 253 (8) provides:
 "[T]he police shall give notice to the owner, if known, and to any person they have reason to believe has an interest in the property, * * * and to all persons who have made claim to the property, and to the finder * * * in writing and * * * served personally or sent by certified mail * * * and shall state, in substance: (a) that if within three months after the date of personal service or mailing of the notice the owner does not claim the property, and if at the end of such three months no action is pending to determine rights to such property * * * the property will be delivered to the finder * * *."
A "finder" of lost property is "the person who first takes possession of lost property". Since the village police took possession of the money while acting in the course of their official duties, the village is a finder within the meaning of the Personal Property Law (PPL, § 256 [2]). If no action is pending to determine rights to the money, or the owner has not claimed it, the village as finder is entitled to the money upon expiration of the three-year period (PPL, § 253 [7] and [8]).*
There is also a possibility that the money seized might be contraband, i.e., money that is proceeds of a crime. See Ambulance Corps v Wendt, 95 Misc.2d 414 (Civil Ct of City of New York, N Y Co, 1978); Sullivan v Grupposo, 77 Misc.2d 833 (Civil Ct of City of New York, Bronx Co, 1974); Yedvobnick v Grupposo, 73 Misc.2d 687 (Civil Ct of City of New York, N Y Co, 1973); McClendon v Rosetti, 460 F.2d 111 (2d Cir, 1972). However, some courts appear to exclude money allegedly obtained from the commission of a crime from the definition of contraband. See Boyle v Kelly, 53 A.D.2d 457 (2d Dept, 1976) revd on other grds, 42 N.Y.2d 88
(1977); Matter of Caggiano v Frank, 78 Misc.2d 187 (Sup Ct, Nassau Co, 1973), affd 44 A.D.2d 828 (2d Dept, 1974).
More importantly, in the absence of any prosecution for the crime from which the money is received, or a need to retain the money as evidence, the confiscation of the money may be improper even if the original seizure was valid (see Ambulance Corps v Wendt, supra; Boyle v Kelly,supra; McClendon v Rosseti, supra). Furthermore, there is no statute which authorizes the forfeiture of proceeds from the illegal sale of controlled substances. See New York State Controlled Substances Act, Public Health Law, §§ 3300, et seq.* and the controlled substance provisions of the Penal Law, §§ 220, et seq. Absent explicit statutory authority, forfeiture may be improper even though a court would refuse to aid an individual who sought to reclaim property derived from an illegal sale. (See, 1973 Op Atty Gen 153, 1959 Op Atty Gen 132; Carr v Hay,2 N.Y.2d 185 (1957); Hofferman v Simmons, 290 N.Y. 449 (1943); Civil Rights Law, § 79-b.)
Moreover, even if the Village of Mount Kisco could prove that the money was contraband because it was proceeds from the illegal sale of controlled substances, that would not give the village a claim to the funds. Where forfeiture is appropriate, the District Attorney of the county where the property is seized must initiate forfeiture proceedings (1976 Op Atty Gen 204; 1973 Op Atty Gen 153, supra; New York Controlled Substances Act, Public Health Law, § 3388; CPLR7201). If the forfeiture is sustained, the money goes to the general funds of the county. Where there is no statutory provision for forfeiture and it is unclear who is entitled to the funds, the money should be turned over to the New York State Comptroller (1959 Op Atty Gen 132, supra).
Finally, the money might be characterized as property in the possession of the decedent at the time of his death. In the event that the money is determined to be decedent's property, the Federal government would be entitled to levy upon the money if it has followed the proper procedures. Levy may be made only on property belonging to decedent. (See, Internal Revenue Code, § 6331 [a] and [b].) The issue of whether decedent had rights in the property to which a Federal tax lien could attach is a matter of state law (Aquilino v United States,363 U.S. 509 [1900]; Atlas Inc. v United States, 459 F. Supp. 1000
[NDNY, 1978]).
A person served with a notice of levy may resist an action to enforce the levy on the ground that the property possessed by him does not belong to the taxpayer (United States v Sterling National Bank T. Co. of N.Y.,494 F.2d 919 [2nd Cir, 1974]).
If it is determined that the money is abandoned property or contraband, the decedent would not have a property interest in the money to which the tax lien could attach. (See, Article 7B of PPL, discussed supra; UnitedStates v Jeffers, 342 U.S. 48 [1951] [person does not have property rights in contraband]; McClendon v Rossetti, 460 F.2d 111 [2d Cir, 1972]; United States v Oritz, 140 F. Supp. 355 [SDNY, 1956]; State of NewJersey v Moriarity, 268 F. Supp. 546 [DNJ, 1967]; United States vClinton, 260 F. Supp. 84 [SDNY, 1966]; People v Salzone, 98 Misc.2d 131
[Criminal Ct, City of New York, Kings Co, 1978]; but see, State of NewJersey v Kaiser, 476 F.2d 610 [3d Cir, 1973].) However, if the property is determined to be property in possession of the decedent, the Internal Revenue Service may prevail if it has followed proper procedures.
In conclusion, the Village of Mount Kisco's claim to the money depends upon whether it is determined to be abandoned property, contraband or property in the possession of decedent at his death. In light of the competing claims and the complex factual determination involved, we suggest that the Village of Mount Kisco, if it decides to assert a claim to the money, seek a judicial determination as to the character of the property.
* It appears that Article 7B of the Personal Property Law has altered the common law doctrine of bona vacantia, which provides that the State may take control of the abandonded property of its residents. See Matterof Khatem v Mikheen, 41 N.Y.2d 845, 847 (1977); Matter of Menschefreund,283 App. Div. 463 (1st Dept, 1954), affd 8 N.Y. 1093 (1960). It appears that under the PPL the village would prevail over the State if the money is abandoned property.
* The act provides only that controlled substances (§ 3387) and vehicles, vessels or aircraft unlawfully used to conceal, convey or transport controlled substances (§ 3388) are subject to forfeiture. Compare the New York statute with the Federal statute on controlled substances, which expressly provides for the seizure and forfeiture of money derived from the illegal sale of controlled substances (Drug Abuse Prevention and Control Act, 21 USCA § 881).